**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* IRWIN SALTZMAN, <br><br> *Qui Tam* Plaintiff, <br><br> VS. <br><br> TEXTRON SYSTEMS CORPORATION, AVCO CORPORATION, TEXTRON, INC., MICHAEL LUBRANO and JOHN DOE(S), <br><br> Defendants. | CIVIL ACTION NO. 1:09-cv-11985-RGS |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS TEXTRON SYSTEMS CORPORATION, AVCO CORPORATION,
TEXTRON, INC., AND MICHAEL LUBRANO'S
<u>MOTION TO DISMISS</u>**

TABLE OF AUTHORITIES

Federal Cases

*Alt. Sys. Concepts Inc. v. Synopsys, Inc.*,
   374 F.3d 23 (1st Cir. 2004) ............................................................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. __, 129 S.Ct. 1937, 1949 (2009) ....................................................................... 2

*Bell Atl. Corp. v. Twombley*,
   550 U.S. 544 (2007) .......................................................................................................... 2

*In re Pharm. Indust. Average Wholesale Price Litig.*,
   538 F.Supp.2d 367 (D.Mass. 2008) .................................................................................. 5

*United States ex rel. Gagne v. City of Worcester*,
   565 F.3d 40, 45 (1st Cir. 2009) ..................................................................................... 6, 7

*United States ex rel. Gublo v. Novacare, Inc.*,
   62 F.Supp.2d 347 (D.Mass. 1999) .................................................................................... 5

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
   498 F.Supp.2d 25 (D.D.C. 2007) ...................................................................................... 5

*United States ex rel. Hutcheson v. Blackstone Med., Inc.*,
   649 F.Supp.2d 48 (D.Mass. 2010) .................................................................................... 8

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
   360 F.3d 220 (1st Cir. 2004) .................................................................................... 6, 7, 8

*United States ex rel. Lisitza v. Johnson & Johnson*,
   Nos. 07-10288, 05-11518, 2011 WL 673925, at *10 (D.Mass. Feb. 25, 2011) ................ 9

*United States ex rel. Loughren v. Unum Provident Corp.*,
   No. 03-11699, 2005 WL 6471014, at *6 (D.Mass. Oct. 6, 2005) ..................................... 7

*United States ex rel. Tillson v. Lockheed Martin Energy Sys.*,
   No. 5:00-39, 2004 WL 2403114, at *33 (W.D. Ky. Sept. 24, 2004) ................................. 5

*United States ex rel. Walsh v. Eastman Kodak Co.*,
   98 F.Supp.2d 141 (D.Mass. 2000) .................................................................................... 7

*United States ex rel. Westmoreland v. Amgen, Inc.*,
   707 F.Supp.2d 123 (D.Mass. 2010) .................................................................................. 8

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ............................................................................................................ 5

Federal Statutes

31 U.S.C. § 3729(a)(1)(b) .................................................................................................... 8

31 U.S.C. §§ 3729-3733 ..................................................................................................... 1

Federal Regulations

48 C.F.R. 1.101 ................................................................................................................... 3

48 C.F.R. 16.703 ................................................................................................................. 2

48 C.F.R. 2.101 ................................................................................................................... 3

48 C.F.R. 28.000 ................................................................................................................. 4

48 C.F.R. 28.300 ................................................................................................................. 4

48 C.F.R. 28.309 ................................................................................................................. 4

48 C.F.R. 28.310 ............................................................................................................... 10

48 C.F.R. 31.200 ......................................................................................................... 4, 11

48 C.F.R. 31.201-1(b) ...................................................................................................... 10

48 C.F.R. 31.201-2 ............................................................................................................. 4

48 C.F.R. 31.205-19(a)(1) ................................................................................................ 10

48 C.F.R. 31.205-19(e)(1) .................................................................................................. 4

48 C.F.R. 31.205-6 ........................................................................................................... 10

Defendants Textron Systems Corporation, Avco Corporation, Textron, Inc., and Michael Lubrano (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff Irwin Saltzman.

## PRELIMINARY STATEMENT

In this single-count *qui tam* action, in which the government has declined to intervene, a former Textron Systems Corporation ("Textron Systems") employee summarily alleges under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, that Textron Systems and its employee, Michael Lubrano, inappropriately sought reimbursement for Defense Base Act ("DBA") workers compensation insurance from the United States. Complaint at ¶¶ 36-37, 43 (hereinafter "Compl. ¶ __"). He further alleges that Textron Systems's parent corporation, Avco Corporation ("Avco") and its ultimate parent corporation, Textron, Inc. ("Textron"), are vicariously liable for the alleged conduct of the other defendants as the parents of Textron Systems. Compl. ¶¶ 34-35. The Complaint should be dismissed because it fails to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) and fails to state any claim under Fed. R. Civ. P. 12(b)(6) against any of the Defendants.[1]

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible." *Ashcroft v. Iqbal*, 556 U.S. __, 129

---

[1] Plaintiff failed to serve the Complaint on Michael Lubrano as required by Fed. R. Civ. P. 4. On March 23, 2011, Plaintiff served the Complaint on Carl Buzawa, Senior Vice President for Contracts and Legal of Textron Systems. *See* Docket Nos. 11, 13. Mr. Buzawa is an agent of Textron Systems and officer of Avco and therefore is only authorized to accept service on behalf of Textron Systems and Avco. Accordingly, the claim against Lubrano should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).

S.Ct. 1937, 1949 (2009).  A civil action must have "facial plausibility," a standard that "is not akin to a 'probability requirement,' but [] asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  In *Bell Atl. Corp. v. Twombley*, 550 U.S. 544 (2007), the Supreme Court held that while a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.

### STATEMENT OF ALLEGED FACTS

Plaintiff alleges the following facts, which are "accepted as true" by Defendants only for the purposes of the motion to dismiss.  *Iqbal*, 129 S.Ct. at 1949.

Plaintiff alleges that on May 23, 2006, Textron Systems entered into Contract No. FA8620-06-G-4027 with the United States Air Force.  Compl. ¶¶ 17, 20.  Textron Systems is a wholly-owned subsidiary of Avco, which is a wholly-owned subsidiary of Textron.  Compl. ¶¶ 8-9.  Michael Lubrano, Director of Contract Management for Textron Systems, signed Contract No. FA8620-06-G-4027 on behalf of Textron Systems.  Compl. ¶ 17.  While the Plaintiff asserts that Contract No. FA8620-06-G-4027 (hereinafter "the Basic Ordering Agreement") is a "contract," it is in fact a Basic Ordering Agreement[2] to provide certain services for Big Safari programs.  Compl. ¶ 20.

---

[2] *See* 48 C.F.R. 204.7003(a)(3)(vii) (identifying instruments with "G" in the ninth position of the 13 alpha-numeric character title as basic ordering agreements).  A basic ordering agreement is "a written instrument of understanding, negotiated between… [a] contracting officer and a contractor, that contains (1) terms and clauses applying to future contracts (orders) between the parties during its term, (2) a description, as specific as practicable, of supplies or services to be provided, and (3) methods for pricing, issuing, and delivering future orders under the basic ordering agreement." 48 C.F.R. 16.703.  "A basic ordering agreement is not a contract."  *Id.*

The Basic Ordering Agreement included the following provisions of the Federal Acquisition Regulations ("FAR"):  (i) FAR 52.228-3, which mandates that a Contractor "provide, before commencing performance under this contract, such workers' compensation insurance or security as the Defense Base Act [] requires" and "continue to maintain it until performance is completed," and (ii) FAR 52.228-5, which requires that "[t]he Contractor, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract," and "[b]efore commencing work under this contract, the Contractor shall notify the Contracting Officer in writing that the required insurance has been obtained."  Compl. ¶¶ 21-22.

Plaintiff alleges that on April 18, 2007, Plaintiff "indicated" to Lubrano that the DBA insurance costs "did not appear compensable" under FAR 31.205-19 and 31.205-6.  Compl. ¶ 27. Plaintiff further alleges that Textron Systems presented a claim for reimbursement for DBA insurance premiums of $17,726.16 for the year 2007 and $73,740.83 for the year 2008.  Compl. ¶¶ 30-31, 36-37.

Significantly, Plaintiff does not allege that Textron Systems ever entered into any contract with the United States Air Force pursuant to the terms of the Basic Ordering Agreement, which is nothing more than an agreement to the terms and conditions that will apply to any contracts that the parties intend to negotiate in the future.  *See* FAR 16.703.

## **BACKGROUND ON THE FAR**

The FAR, codified at Chapter 1 of Title 48 of the Code of Federal Regulations, contains the policies and procedures that govern the negotiation, formation and administration of federal agency contracts.  *See* 48 C.F.R. 1.101 and the definition of "acquisition" at 48 C.F.R. 2.101. Among other things, the FAR includes requirements for obtaining financial protection against

3

losses under a contract with the government.  *See* 48 C.F.R. 28.000.  FAR Subpart 28.3 addresses insurance and stipulates the conditions under which specific workers' compensation clauses pertaining to the DBA must be inserted into government contracts.  *See* 48 C.F.R. 28.300.  Specifically, FAR 28.309, *Contract Clauses for Workers' Compensation Insurance*, requires that FAR 52.228-3 be inserted into contracts when the DBA applies (if a public-work contract performed outside the United States or approved or financed under the Foreign Assistance Act of 1961), and FAR 28.310 requires that FAR 52.228-5, *Contract Clause for Work on a Government Installation*, be inserted into fixed-price contracts that require the contractor to perform work on a government installation.  *See* 48 C.F.R. 28.309, 28.310.

FAR Subpart 31.2, referenced in paragraph 27 of Plaintiff's Complaint, contains the cost principles that apply to government contracts with commercial organizations.  *See* 48 C.F.R. 31.200; Compl. ¶ 27.  A cost is allowable if it:  (1) is reasonable; (2) is allocable; (3) complies with standards promulgated by the CAS Board, if applicable, generally accepted accounting principles, and practices appropriate to the circumstances; (4) complies with the terms of the contract; and (5) complies with the limitations set forth in FAR 31.2.  *See* 48 C.F.R. 31.201-2. FAR 31.205-19 addresses cost principles relating to Insurance and Indemnification and provides that "[c]osts of insurance required or approved pursuant to the contract are allowable."  48 C.F.R. 31.205-19(e)(1).

## **ARGUMENT**

I.  **THE COMPLAINT FAILS TO STATE A CLAIM AGAINST AVCO AND TEXTRON UNDER FED. R. CIV. P. 12(b)(6)**

The Complaint does not allege a single act relative to the underlying claim by Avco or Textron.  Indeed, the only fact alleged as to Avco or Textron is that each entity is related to

4

Textron Systems. Compl. ¶ 9. In sum, the Plaintiff does not allege a single fact that would support any imputation of liability to these Defendants.

As a matter of law, liability cannot be imposed on a "related" entity, be it a parent, an affiliate, or a subsidiary simply by virtue of a corporate relationship. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (mere fact that there exists a parent-subsidiary relationship does not make one liable for the torts of its affiliate); *see also In re Pharm. Indust. Average Wholesale Price Litig.*, 538 F.Supp.2d 367, 391 (D.Mass. 2008) (a corporate parent is not automatically liable for the torts committed by its subsidiary); *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F.Supp.2d 25, 59 (D.D.C. 2007) ("[B]eing a parent corporation of a subsidiary that commits a FCA violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation"); *United States ex rel. Tillson v. Lockheed Martin Energy Sys.*, No. 5:00-39, 2004 WL 2403114, at *33 (W.D. Ky. Sept. 24, 2004) (same).[3]

Thus, Plaintiff has failed to state any claim against Avco or Textron and they should be dismissed from this lawsuit.

## II. THE COMPLAINT FAILS TO MEET THE HEIGHTENED PLEADING STANDARD OF FED. R. CIV. P. 9(b)

As to defendants Textron Systems and Lubrano, the Complaint fails to plead any fraud, much less with the "particularity" required by Fed. R. Civ. P. 9(b). *United States ex rel. Gublo v. Novacare, Inc.*, 62 F.Supp.2d 347, 354 (D.Mass. 1999) ("Claims brought under the FCA must comply with Rule 9(b)."). Fed. R. Civ. P. 9(b) requires that "a complaint must specify 'the time,

---

[3] It goes without saying that Plaintiff's Complaint does not meet the heightened pleading standard required under Fed. R. Civ. P. 9(b) as to Avco and Textron.

5

place and content of an alleged false representation.'" *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (*citing United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007)); *see also Alt. Sys. Concepts Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (noting that Rule 9(b) requires the pleader "to specify the who, what, where, and when of the allegedly false or fraudulent representation"). For the purposes of the FCA, Fed. R. Civ. P. 9(b) requires that a plaintiff identify "with particularity" "the actual false claims submitted to the government" and the "[u]nderlying schemes and other wrongful activities that result[ed] in the submission of the fraudulent claims." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232 (1st Cir. 2004) (requiring relator to allege details that identify particular false claims submitted to the government). "Conclusory allegations… are not sufficient" to satisfy Rule 9(b). *Gagne*, 565 F.3d at 45 (citing *Rost*, 507 F.3d at 731).

Here, Plaintiff fails to allege any facts relating to the purported false claim. He makes only conclusory allegations that Textron Systems "presented a claim for reimbursement… to the United States of America" for "$17,726.16 for Defense Base Act insurance premiums for the year 2007," and "$73,740.83 for Defense Base Act insurance premiums for the year 2008." Compl. ¶¶ 30-31. Most tellingly, Plaintiff does not allege why the claim is false, the *sine qua non* of a FCA action. Moreover, the Complaint contains no allegation relating to (i) the contract or order under which Textron Systems supposedly made a claim for reimbursement, (ii) the date or date(s) on which the claim for reimbursement was submitted, (iii) the individuals involved in preparing and submitting the claim for reimbursement, or (iv) the form of the claim for reimbursement. The document Plaintiff cites in support of its factually deficient assertions is a single-page document with no date or recipient and no other information or context to evidence a claim for reimbursement to the United States of America. Compl. at Exhibit D. Plaintiff does

not allege any connection between the document at Exhibit D and any contract, order or the Basic Ordering Agreement. The document at Exhibit D – with or without the allegations in the Complaint – surely does not rise to the level of particularity required by Fed. R. Civ. P. 9(b). *See United States ex rel. Loughren v. Unum Provident Corp.*, No. 03-11699, 2005 WL 6471014, at *6 (D.Mass. Oct. 6, 2005) ("The FCA does not permit a relator to simply describe a private scheme in detail and then allege, without stating a valid reason for the allegations, that claims for illegal payments must have, were likely to have, or should have been submitted to the government."); s*ee also Gagne*, 565 F.3d at 47 (conclusory allegations about defendants' submissions "absent more detail about those submissions and their connection to the false or fraudulent claims, is insufficient under Rule 9(b)."); *Karvelas*, 360 F.3d at 235 ("failure to identify with particularity any false claims that the defendants submitted to the government is, ultimately, fatal to his complaint."); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F.Supp.2d 141, 147 (D.Mass. 2000) (fraud was not adequately pleaded in *qui tam* complaint when allegations outlined procedure of how false claims were submitted to Medicare, but did not cite specific claims or submissions).

### III.     THE COMPLAINT FAILS TO STATE A CLAIM AS TO TEXTRON SYSTEMS AND LUBRANO UNDER FED. R. CIV. P. 12(b)(6)

Even if this Court were to find that Plaintiff has met the heightened pleading requirement of Fed. R. Civ. P. 9(b), the Complaint should nonetheless be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a claim on which relief can be granted. To state a claim under the FCA, a plaintiff must prove that a defendant "(1) present[ed] or cause[ed] to be presented to the United States government, a claim for approval or payment, where (2) that claim [wa]s false or fraudulent, and (3) the action was undertaken 'knowingly,' in other words, with actual knowledge of the falsity of the information contained in the claim, or in deliberate ignorance or

7

reckless disregard of the truth or falsity of that information." *Karvelas*, 360 F.3d at 225 (quoting 31 U.S.C. § 3729(a)(1)(b). Here, the Complaint fails to allege that (1) any claim made to the United States for reimbursement of DBA insurance premiums was false, and (2) Textron Systems and Lubrano knew or had reason to believe that any such claim was false.

### A.     The Complaint Does Not Allege A False Claim

"Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation." *Id.* ("[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"). In order to prove falsity under the FCA, a plaintiff must demonstrate (1) factual falsity, (2) legal falsity under an express certification theory, or (3) legal falsity under an implied certification theory. *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 649 F.Supp.2d 48, 62 (D.Mass. 2010). A "factually false" claim is one "in which the goods or services provided are either incorrectly described or which makes a claim a for a good or service never provided." *Id.* "Legally false" claims are those in which "a party certifies compliance with a statute or regulation but the party is not actually in compliance with the statute or regulation." *United States ex rel. Westmoreland v. Amgen, Inc.*, 707 F.Supp.2d 123, 133 (D.Mass. 2010). "A claim is legally false under an express certification theory when the party making the claim for payment expressly represents compliance with a statute or regulation, and such certification is a precondition to payment." *Id.* "No specific form of 'certification' is required, so long as the statement of compliance was knowingly false when made." *Id.* "A claim is legally false under the implied certification theory when a claimant makes no statement regarding compliance with a statute or regulation, but by submitting a claim, the claimant implies that it has complied with all of the stated conditions for

8

payment." *United States ex rel. Lisitza v. Johnson & Johnson*, Nos. 07-10288, 05-11518, 2011 WL 673925, at *10 (D.Mass. Feb. 25, 2011).

Here, the Complaint does not allege any facts showing that any claim submitted was false. The only allegation the Plaintiff makes regarding the supposed claim is that Textron Systems presented a claim for reimbursement of DBA insurance premiums to the United States for $17,726.16 for the year 2007 and $73,740.83 for the year 2008. Compl. at ¶¶ 30-31. Plaintiff alleges that the Basic Ordering Agreement required DBA insurance and provided that the insurance was to be provided at Textron Systems own expense, Compl. ¶¶ 38-39, but fails to allege any contract or order that resulted from the Basic Ordering Agreement that incorporated either of these provisions or any relationship between the purported claim for reimbursement and the Basic Ordering Agreement.

Plaintiff does not (and cannot) cite to a single fact in support of his allegation that a claim is factually or legally false. Plaintiff does not allege that Textron Systems or Lubrano either incorrectly characterized the insurance or failed to provide the insurance. Plaintiff also does not allege that Textron Systems or Lubrano certified compliance with any statute or regulation that was a precondition of payment under any contract, that any such certification would have been false, or that the mere act of submitting the claim served as certification of any compliance with any condition for payment under any contract.

Plaintiff wants the Court to infer that because the Basic Ordering Agreement incorporated FAR 52.228-5,[4] which required Textron to provide the insurance "at its own expense," a claim for reimbursement that is not alleged to have any relationship to the Basic Ordering Agreement

---

[4] Plaintiff incorrectly cites to FAR 52.228-3 in paragraphs 38 and 39 of the Complaint. FAR 52.228-3 does not contain the words "at its own expense."

is false. Compl. ¶¶ 38-39. Even if the Court were inclined to make such an inference, this allegation fails: FAR 52.228-5 pertains to fixed price contracts, in which the cost of any insurance required by the contract is negotiated into the price of the contract. *See* 48 C.F.R. 28.310 (requiring insertion of FAR 52.228-5 in fixed price contracts). In fixed price contracts, a contractor has no choice but to obtain any required insurance at its own expense because the cost cannot be calculated at the time of contracting. FAR 52.228-5 speaks solely to the process for purchasing insurance and providing notice to the government of such purchase in fixed price contracts and has no bearing whatsoever on the allowability of any such cost. *See* 48 C.F.R. 31.201-1(b) (defining allowable costs as those allowable pursuant to FAR 31).

Plaintiff further fails to allege *why* DBA insurance is not "compensable" under FAR 31.205-19 or FAR 31.205-6. Notably, this is not a pleading problem that Plaintiff can cure because any such cost is allowable under the cost principles of FAR Subpart 31.2. FAR 31.205-19, the cost principle that governs the allowability of insurance and indemnification costs, specifically provides at subsection (a)(1) that "insurance by purchase or by self-insuring includes coverage the contractor is required to carry or to have approved, under the terms of the contract," and at subsection (e)(1) that "[c]osts of insurance required or approved pursuant to the contract are allowable." *See* 48 C.F.R. 31.205-19(a)(1), (e)(1). Moreover, workers compensation insurance costs are not specifically limited or disallowed by FAR 31.205-19 or any other provision of FAR Subpart 31.2. FAR 31.205-6 governs the allowability of compensation for personal services and there is nothing in that regulation that has any relevance or bears any relationship to workers compensation insurance costs or the allowability of the such costs. *See* 48 C.F.R. 31.205-6. Therefore, even if there were a contract which required Textron Systems to "provide, before commencing performance under this contract, such workers' compensation

10

insurance or security as the Defense Base Act [] requires," Compl. ¶ 21, the cost of such insurance would be an allowable cost for which Textron Systems could properly seek reimbursement under FAR Part 31.205-19(e)(1) and in accordance with FAR 31.201-2.

Therefore, as a matter of law, Plaintiff cannot allege a false claim for any claim for reimbursement of DBA insurance premiums under a contract, but, of course, Plaintiff has not even alleged the existence of a contract.

### B.   The Complaint Does Not Allege That Textron Systems Or Lubrano Knew DBA Insurance Was Not Reimbursable

The only "fact" that Plaintiff alleges to support his unfounded inference that Textron Systems or Lubrano knew that DBA insurance was not a reimbursable cost is his self-serving allegation that he "indicated" to Lubrano that "such costs did not appear compensable." Compl. at ¶ 27. As Plaintiff's own email demonstrates, Plaintiff made no explicit statement to Lubrano regarding the allowability of DBA insurance premiums. Compl. at Exhibit B. Rather, Plaintiff cited a section of FAR 31.205-19 regarding the allowability of life insurance when such insurance is "maintained by the contractor in connection with the general conduct of its business." 48 C.F.R. 31.205-19(e)(2)(v). Because the alleged costs were for DBA workers compensation insurance premiums that were purportedly required by the Basic Ordering Agreement, this subsection of the FAR is not relevant to the question whether such costs are allowable. *See* 48 C.F.R. 31.200 (governing Cost Principles for Contracts with Commercial Organizations). Moreover, contrary to Plaintiff's inference that his statement "indicated" to Lubrano that the cost "did not appear compensable," Exhibit B evidences Lubrano's belief that DBA insurance was an allowable cost. Compl. at Exhibit B ("I am thinking it can be a direct charge."). Plaintiff's mischaracterization of his own statement to Lubrano does not suffice to allege that Textron Systems or Lubrano knew that DBA insurance was not a reimbursable cost.

11

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice as to all of the Defendants.

Dated: May 4, 2011                                                    Respectfully submitted,

                                                                                                                    /s/ Miranda Hooker_____
Karen F. Green (BBO# 209050)
Miranda Hooker (BBO # 661569)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel.: (617) 526-6333
Fax: (617) 526-5000
miranda.hooker@wilmerhale.com

**Certificate of Service**

  I, Miranda Hooker, hereby certify that this Memorandum of Law in Support of Defendants Textron Systems Corporation, AVCO Corporation, Textron, Inc., and Michael Lubrano's Motion to Dismiss filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper or electronic copies will be sent to those indicated as non-registered participants on May 4, 2011.

                    /s/ Miranda Hooker
                     Miranda Hooker