UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11985-RGS

UNITED STATES OF AMERICA,
ex rel. IRWIN SALTZMAN

v.

TEXTRON SYSTEMS CORPORATION,
AVCO CORPORATION, TEXTRON, INC.,
MICHAEL LUBRANO, and JOHN DOE(S)

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

June 9, 2011

STEARNS, D.J.

In this qui tam action, plaintiff/relator Irwin Saltzman alleges that Textron

Systems Corporation (Textron Systems) and its employee, Michael Lubrano,

inappropriately sought reimbursement from the United States for workers'

compensation insurance premiums. Compl. ¶¶ 36-37, 43. Saltzman further alleges that

Textron Systems' parent corporation, Avco Corporation (Avco), and its ultimate parent

corporation, Textron, Inc., are vicariously liable for the alleged conduct of Textron

Systems and Lubrano.[1] *Id*. ¶¶ 34-35. Presently before the court is defendants' motion

---

[1] Textron Systems is a wholly owned subsidiary of Avco, which is a wholly owned subsidiary of Textron, Inc. *Id*. ¶¶ 8-9.

to dismiss.  The court heard oral argument on June 6, 2011.

BACKGROUND

On May 23, 2006, Textron Systems entered into Contract No. FA8620-06-G-4027 with the United States Air Force.  Michael Lubrano, Director of Contract Management, signed the agreement on behalf of Textron Systems.  *Id.* ¶ 17. Contract No. FA8620-06-G-4027 is a Basic Ordering Agreement (BOA) for Textron Systems to provide certain services for the Air Force's "Big Safari" program.[2]  *Id.* ¶ 20. The BOA incorporated the following provisions of the Federal Acquisition Regulations (FAR): FAR 52.228-3, which mandates that a Contractor "provide, before commencing performance under this contract, such workers' compensation insurance or security as the Defense Base Act [DBA] . . . requires" and "continue to maintain it until performance is completed"; and FAR 52.228-5, which requires that "[t]he Contractor, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract."  *Id.* ¶¶ 21-22.

On April 17, 2007, Lubrano sent an email to Frank Parisi (the Program Manager for Textron Systems), Saltzman, and others in the company, asking whether insurance

---

[2] The Big Safari program supports the Air Force's acquisition of special weapons systems.

costs could be passed along to the government. *Id*. at Ex. B. Saltzman alleges that he "indicated" to Lubrano that insurance costs "did not appear compensable" under FAR 31.205-19 and 31.205-6. *Id*. ¶ 27. Saltzman further alleges that Textron Systems subsequently presented a claim to the United States for reimbursement for DBA insurance premiums of $17,726.16 for the year 2007 and $73,740.83 for the year 2008. *Id*. ¶¶ 30-31, 36-37, Ex. D.

On November 19, 2009, Saltzman filed a Complaint alleging a single count violation of the False Claims Act (FCA), 31 U.S.C. § 3729, against all named defendants. *Id*. ¶ 44. On September 23, 2010, the government filed a notice of election declining to intervene in this action. On May 4, 2011, defendants filed a motion to dismiss the Complaint pursuant to Rules 9(b), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained

3

that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations and quotations omitted).

## I. Claim Against Avco and Textron, Inc.

Defendants argue that the Complaint fails to state a claim against defendants Avco and Textron, Inc., under Fed. R. Civ. P. 12(b)(6), because it fails to allege any fact that connects these defendants to the alleged conduct of Textron Systems. In response, Saltzman argues that this court should pierce the corporate veils of Avco and Textron, Inc., and find both entities vicariously liable for the alleged conduct of Textron Systems. As Saltzman concedes, Massachusetts is especially strict in its respect for the corporate form. *See Birbara v. Locke*, 99 F.3d 1233, 1239 (1st Cir. 1996) ("[I]n a variety of factual settings . . . the Supreme Judicial Court has repeated that under Massachusetts law, the corporate veil will only be pierced in rare situations."). Nevertheless, Saltzman argues that in this case, the corporate veil should be pierced to prevent Avco and Textron, Inc. from profiting from Textron Systems' "fraudulent activities." Pl.'s Opp'n Mem. at 9-10.

Under Massachusetts law, it is appropriate to depart from the general principle

of corporate separateness:

> (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968). In applying this standard, courts may consider factors including insufficient capitalization, nonobservance of corporate formalities, failure to pay dividends, insolvency at the time of the litigated transaction, siphoning off of corporate funds, absence of functioning officers besides dominant shareholders, absence of corporate records, use of the corporation to advance interests of dominant shareholders, and use of the corporation in promoting fraud. *Birbara*, 99 F.3d at 1240 n.7, citing *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 16 (1st Cir. 1985).

Saltzman does not plead facts suggesting that any of these factors are present with respect to Avco and Textron, Inc. Rather, he alleges only that: (1) Textron, Inc., and its subsidiaries are a consolidated group for tax purposes; (2) Textron Systems advertises itself as a wholly owned subsidiary of Textron, Inc.; and (3) Textron, Inc., reports its earnings based upon the achievements of Textron Systems. These factors

are insufficient to support a finding of "pervasive control" or "a confused intermingling of activity." *See United States ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Supp. 2d 35, 39 (D. Mass. 2000) ("Ownership – even total ownership – of a corporation does not by itself impart the corporation's liabilities to the owner, and that rule is not abated simply because the owner happens to be another corporation."); *see also Sec. Indus. Ass'n v. Fed. Home Loan Bank Bd.*, 588 F. Supp. 749, 754 (D.D.C. 1984) ("Except in unusual circumstances, courts will not disregard the separate identities of a parent and its subsidiary, even a wholly-owned subsidiary."). Therefore, no viable action lies against Avco or Textron, Inc.

## II. Claim Against Textron Systems and Lubrano

With respect to defendants Textron Systems and Lubrano, defendants argue that the Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants further contend that the Complaint fails to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) because it fails to allege any facts relating to the purported false claim. Finally, defendants argue that Saltzman failed to serve the Complaint on Lubrano as required by Fed. R. Civ. P. 4.

### A. Rule 12(b)(6)

Defendants argue that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a claim on which relief can be granted. "A suit will

be dismissed if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 2011 WL 2150191, at *5 (1st Cir. June 1, 2011), quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

"FCA liability attaches to any individual who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval,' 31 U.S.C. § 3729(a)(1)(A), or 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,' *id*. § 3729(a)(1)(B)." *Hutcheson*, 2011 WL 2150191, at *2 n.3. Defendants contend that the Complaint fails to allege that: (1) any claim made to the United States for reimbursement of DBA insurance premiums was false; or (2) Textron Systems and Lubrano knew or had reason to believe that any such claim was false.

Saltzman alleges that Textron Systems presented to the United States a claim for reimbursement of DBA insurance premiums in the amounts of $17,726.16 for the year 2007 and $73,740.83 for the year 2008. Compl. ¶¶ 30-31. Saltzman contends that this claim was false because the BOA required that DBA insurance was to be provided at Textron Systems' own expense. *Id*. ¶¶ 39-40. Defendants argue that Saltzman fails to allege any relationship between the purported claim for reimbursement and the

BOA.[3]  Saltzman's response is that all of Textron Systems' contracts with the government incorporated the terms of the BOA, including the requirement that Textron Systems provide DBA workers' compensation insurance "at its own expense."[4] Saltzman argues that by submitting a claim for the insurance costs, defendants failed to comply with a condition for payment, and thus, the claim was false.

As the First Circuit recently noted, other courts "have found claims false or fraudulent for non-compliance with a contract term."  *Hutcheson*, 2011 WL 2150191, at *14, citing *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1269 (D.C. Cir. 2010); *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 531-532 (10th Cir. 2000); *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1170 (10th Cir. 2010).  However, here, Saltzman has failed to allege facts linking the

---

[3] Defendants assert that the BOA "is nothing more than an agreement to the terms and conditions that will apply to any contracts that the parties intend to negotiate in the future."  Defs.' Mem. at 3, citing FAR 16.703.  Defendants contend that even if Saltzman was able to make a connection between the alleged false claim and the BOA, the cost of DBA insurance would still be "an allowable cost for which Textron Systems could properly seek reimbursement under FAR 31.205-19(e)(1) and in accordance with FAR 31.201-2."  Defs.' Mem. at 10-11.

[4] At oral argument, counsel for defendants argued that the BOA's requirement that insurance was to be provided at Textron Systems' "own expense" means only that Textron Systems was *initially* responsible for the insurance costs, but it does not preclude Textron Systems from subsequently seeking reimbursement for insurance costs that are allowable under the FAR.

purported false claim to non-compliance with the BOA. *Cf. Hutcheson*, 2011 WL 2150191, at \*13-14.

Defendants further argue that the Complaint does not allege that Textron Systems or Lubrano knew that DBA insurance was not reimbursable. "[L]iability cannot arise under the FCA unless a defendant acted knowingly and the claim's defect is material."[5] *Id.* at \*10. The knowledge requirement is expressly stated in the FCA and defined at 31 U.S.C. § 3729(b):

> (b) Definitions.--For purposes of this section--
> (1) the terms "knowing" and "knowingly" --
> (A) mean that a person, with respect to information--
> (I) has actual knowledge of the information;
> (ii) acts in deliberate ignorance of the truth or falsity of the information; or
> (iii) acts in reckless disregard of the truth or falsity of the information; and
> (B) require no proof of specific intent to defraud

The Complaint states that "Relator indicated that . . . such insurance costs did not appear compensable." Compl. ¶ 27. However, the email message that Saltzman cites in support of this allegation is ambiguous. It quotes an inapplicable section of the FAR, 31.205-19(e)(2)(v), which states that "[c]osts of insurance on the lives of officers, partners, proprietors, or employees are allowable only to the extent that the

---

[5] Neither party has raised the issue of materiality.

insurance represents additional compensation (see 31.205-6)."[6]   *Id.* at Ex. B.
Saltzman's email does not discuss DBA workers' compensation insurance premiums
and whether they are compensable.  *See id*.  Lubrano's email response is similarly
ambiguous.  He states, "I am thinking it can be a direct charge," which suggests that
he may have thought that DBA workers' compensation insurance was an allowable
cost. *Id*.

What the chain of emails does show is that Lubrano: (1) asked experienced
employees questions about whether DBA insurance premiums could be passed along
to the government; (2) received an ambiguous answer from Saltzman; and (3) came to
a not unreasonable conclusion that the DBA insurance premiums could be "a direct
charge."[7]  This falls well short of a demonstration of actual knowledge of falsity.[8]

## B.  Rule 9(b)

---

[6] This regulation clearly contemplates internal going-concern insurance vehicles
like key-man insurance.

[7] Even if Lubrano was wrong in this regard (the court is of no opinion), he is not
culpable, as the FCA is not a strict liability statute.

[8] The court assumes that a showing of willful blindness would satisfy the
knowledge requirement for a false claim.  *Cf.  Global-Tech Appliances, Inc. v. SEB
S.A.*, 2011 WL 2119109, at *7-8 (May 31, 2011) (holding that willful blindness
satisfies the knowledge requirement for proving induced infringement of a patent under
35 U.S.C. § 271(b)).  There can be no willful blindness here, as Lubrano made the
relevant inquiry of Saltzman and others.

Defendants further argue that the Complaint should be dismissed for failure to comply with Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* "In such cases, the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (noting that "there may be occasional exceptions, owing to extraordinary circumstances."). The heightened pleading requirements of Rule 9(b) apply to claims brought under the FCA. *See U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009).

Defendants contend that the Complaint fails to plead any fraud, much less with the "particularity" required by Fed. R. Civ. P. 9(b). While the Complaint states precise dollar amounts, *see* Compl. ¶¶ 30-31, it is silent as to who submitted the claim or where and when the claim was submitted. As defendants point out, the only evidence of a false claim that Saltzman offers is a single-page document attached to the Complaint that has no visible date of creation or identified recipient, and no other contextual information confirming that it is in fact a claim for reimbursement that was submitted to the government. *See id.* at Ex. D. Saltzman contends that this document "indicates that the claims must have, or at least were likely to have, been submitted." Pl.'s Opp'n Mem. at 8. This conclusory assertion is woefully insufficient under Rule

11

9(b). *See Gagne*, 565 F.3d at 47-48 ("[A] conclusory allegation . . . absent more detail about those submissions and their connection to the false or fraudulent claims, is insufficient under Rule 9(b).").[9]

## C. Rule 12(b)(5)

Finally, defendants argue that the claim against Lubrano should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) because Saltzman failed to serve the Complaint on Lubrano as required by Fed. R. Civ. P. 4. On March 23, 2011, Saltzman served the Complaint on Carl Buzawa, Senior Vice President for Contracts and Legal at Textron Systems. *See* Summons Returned Executed (Dkt. #13). Defendants assert that Buzawa is only authorized to accept service on behalf of Textron Systems and Avco.

Saltzman concedes that the attempt to serve Lubrano through Buzawa "appears to have been in error." Pl.'s Opp'n Mem. at 10. However, Saltzman argues that dismissal is not appropriate where "'there is a reasonable prospect that [the] plaintiff ultimately will be able to serve [the] defendant properly.'" *Pandey v. Giri*, 457 F.

---

[9] Ordinarily, the court would allow additional time for discovery limited to the issue of developing evidence as to whether a claim was actually submitted. *See Hutcheson*, 2011 WL 2150191, at *6 n.8 ("It is up to the court in the first instance to weigh the adequacy of the complaint for purposes of Rule 9(b) and, if appropriate, to provide 'an opportunity to correct [any] pleading deficiencies.'"), quoting *United States ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 115 (1st Cir. 2010). However, because the court finds grounds for a dismissal under Fed. R. Civ. P. 12(b)(6), further discovery would simply license a fishing expedition, the result that Rule 9(b) is intended to avoid.

Supp. 2d 94, 99 (D. Mass. 2006).[10]  Because the claim against Lubrano will be dismissed under Rule 12(b)(6), the question of whether Saltzman should be given additional time to perfect service is moot.

ORDER

It is the court's intention to <u>ALLOW</u> defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The Clerk will notify the United States accordingly, and if no response is received within ten (10) days of the date of this Order, the Clerk will enter an order of dismissal and close the case.[11]

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[10] Defendants assert that "[t]o date, Lubrano has not been served with the Complaint and Plaintiff has made no apparent effort to serve the Complaint on Lubrano."  Defs.' Reply Mem. at 2 n.1.  At oral argument, counsel for Saltzman stated that he has made no recent efforts to serve Lubrano because the time window for service has expired.

[11] On February 22, 2011, this court issued an Order stating that "should Relator or Defendants propose that this action be dismissed, settled, or otherwise discontinued, the court will solicit the written consent of the United States before ruling or granting its approval."